IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARY A. VANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 09-249-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

1.  On April 14, 2009, plaintiff Mary A. Vann ("Vann") filed this appeal from the Administrative Law Judge ("ALJ") decision denying her disability benefits under the Social Security Act. (D.I. 2.) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 13; D.I. 16.) For the reasons that follow, the court will grant-in-part and deny-in-part both parties' motions. The court will also affirm-in-part and vacate-in-part the ALJ's decision, and remand this matter to the ALJ for further proceedings. The court's reasoning follows.[1]

2.  In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). If a court determines that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir.

---

[1] Since the court writes primarily for the benefit of the parties and the ALJ, to whom the underlying facts are well-known, it will address only the facts relevant to the cross-motions.

2005) (quoting Fed. R. Civ. P. 56(c)). A court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (citation omitted). Substantial evidence is further defined as "more than a mere scintilla." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Credibility determinations are, likewise, the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *See Pysher v. Apfel*, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether this court would make the same determination; but, whether the ALJ's conclusion is reasonable. In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

3. Vann asserts that the ALJ's decision was legally flawed in six respects. On the ALJ's evaluation of Vann's mental impairments, Vann alleges that: "(1) The ALJ did not conduct legally adequate listing and drug addiction and alcoholism (DAA) analyses; (2) the ALJ did not develop the relevant record; and (3) the ALJ did not accord appropriate deference to the medical opinion evidence." (D.I. 14 at 5-16.) Vann further alleges, with respect to the ALJ's vocational findings, that: "(1) It is impossible from the existing record to know what functional limitations were actually considered by the VE, or whether those limitations were consistent with the ALJ's RFC finding; (2) The VE's testimony was inconsistent with the *DOT* [*Dictionary of*

2

*Occupational Titles*] and the Commissioner's own policy; and (3) Neither the ALJ's RFC finding nor the VE hypothetical accounted for all of Ms. Vann's established limitations." With respect to what limitations the VE considered and whether the VE's testimony was consistent with the ALJ's RFC findings and the relevant law and *DOT* policies, the court will vacate the ALJ's decision and remand for further proceedings consistent with this opinion. The court will reject Vann's other arguments and affirm the ALJ's decision in all other respects.

4.  Vann argues that the ALJ did not conduct the requisite listing or DAA analyses, and did not adequately develop the record with respect to Vann's mental impairments – especially whether she met the criteria of Listing 12.04C, either alone or as incorporated by Listing 12.09B. The court disagrees. The defendant asserts, and the court agrees, that the ALJ found that Vann did not suffer from a severe impairment due to DAA/polysubstance abuse. (See Tr. 20-21.) A person meets Listing 12.04 if she has an affective disorder that meets the required level of severity. Vann contends that she meets the requirements of part C of the Listing, which states in relevant part:

> [The claimaint has a m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . :
>
> 3. Current history of 1 or more years' inability to function outside a *highly supportive living arrangement*, with an indication of *continued need for such an arrangement*.

20 C.F.R. Pt. 404, Subpt. P., Appx. 1, Listing 12.04 (emphasis added).[2]

---

[2] Vann does not assert on appeal that she meets the requirements of C.1 or C.2 of the listing, instead centering her arguments on her alleged need for a "highly supportive living arrangement." (See D.I. 14 at 6.)

5.  The issue of whether Vann meets the criteria of 12.04C turns on whether her residence at Connections, a group home in Georgetown, Delaware, demonstrates an "inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." The ALJ concluded in her opinion that she did not, and this court finds that there is substantial evidence to support the ALJ's finding. Vann testified at hearings in both 2007 and 2008 that she entered Connections to help her refrain from drug use rather than to obtain treatment for a chronic affective disorder. (See Tr. 637-38, 660, & 671.) As the defendant notes, Vann reported at her hearings that "she was not restricted from leaving the residence; left the residence for medical appointments, to see her mother, wash her clothing, and ride a bike; performed chores at the residence, but was not under any time constraints to finish them; and lived at the residence with six other women (Tr. 661-62, 671, 674, 677)." Thus, there is sufficient evidence in the record for the ALJ to have concluded that Connections was not a highly supportive living arrangement. Moreover, even assuming *arguendo* that it was such a living arrangement, Vann reported that she had to remain clean from drugs for at least a month in order to enter Connections in the first place. (See Tr. 660-61.) Since the purpose of Vann entering Connections was to help her refrain from drug use and since Vann had been clean from drugs before she even entered Connections, the evidence is sufficient to sustain the ALJ's finding that Vann did not demonstrate an "inability to function" outside Connections, much less a continued need for such a living arrangement in the future.

6.  Vann also notes that the ALJ did not merely say that the evidence was insufficient to meet the criteria of Listing 12.04; rather, Vann notes, the ALJ said that there was "no evidence." (See D.I. 18 at 2, citing Tr. 22.) Presumably, this particular grievance with the ALJ's

4

opinion would have been overcome if the ALJ had merely substituted the wording "*insufficient evidence*" for "*no* evidence." Fortunately, the court need not dwell long on this subject, since its task on review is limited to reviewing the ALJ's *decisions*, rather than her word choice, and the decisions themselves are reviewed under a deferential "substantial evidence" standard. The ALJ's finding with respect to mental impairments was that "[t]he claimaint does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (Tr. 21.) That is the finding for which the court must find sufficient evidence. The only basis under which Vann asserts the ALJ should have found she had an impairment meeting one of the listings in Subpart P is through Listing 12.04, specifically 12.04C.[3] For the reasons stated in the preceding paragraphs, the court rejects Vann's argument with respect to 12.04C. That is all that is necessary to affirm the ALJ's decision with respect to Vann's alleged mental impairments. The court's task on appeal is not to parse the entirety of the ALJ's opinion and determine whether every single word is correct or justified; rather it is to review her ultimate findings and determine whether they are supported by substantial evidence.

7. In what is perhaps a related issue, Vann alleges that the ALJ failed to develop the record with respect to Vann's alleged mental impairments. The court disagrees. The response in the defendant's brief with respect to the ALJ's duty of an ALJ to develop the record and ALJ Showalter's development of the record in this case, is concise and on point. Consequently, the

---

[3] In fact, Vann rather forcefully chided the defendant for addressing potential arguments outside 12.04A and C. (See D.I. 18 at 1-2.) The court finds the defendant's caution in addressing 12.04B understandable considering that Vann stated in her opening brief that she was disabled under "Parts A and C of Listing 12.04," despite the fact that the criteria of 12.04A would need to be met only if the criteria of

5

court will adopt the defendant's stated reasoning as its own. (See D.I. 17 at 29-30 (beginning with "While an ALJ" and ending with "obligation to develop the record").) The court will pause only to comment that Vann's arguments on this point read the ALJ's duty to develop the record far too broadly, and the claimant's duty to bring forth evidence supporting her claims for benefits far too narrowly.

8. Vann also argues that the ALJ failed to give appropriate deference to certain medical opinion evidence, especially a 2003 opinion by Dr. Joseph Keyes. The court finds that the ALJ reasonably assigned little weight to Dr. Keyes' 2003 opinion. At the time of the 2003 evaluation, Vann falsely told Dr. Keyes that she was not actively abusing drugs. (See Tr. 28-29.) Moreover, as the defendant notes, the 2003 evaluation related to an earlier SSI application and was made well before the time period relevant to this case. (See D.I. 17 at 30, citing Tr. 29.) The ALJ decision to accord weight to the opinions of the state agency psychological consultants only to the extent that they were in accord with the ALJ's RFC findings was similarly reasonable, for the reasons stated on page 16 of the ALJ's opinion. (See Tr. 30.)

9. The court also rejects Vann's suggestion that the VE and ALJ failed to account for all of Vann's limitations, with the exception of the matters discussed in paragraph 10, *infra*. As the defendant asserts in his brief, there is substantial evidence supporting the ALJ's finding that Vann's subjective complaints were not entitled to full credence to the extent that they conflicted with the ALJ's RFC findings. (See D.I. 17 at 31-34.) As for the remaining asserted limitations, the plaintiff's briefs do not explain how the limitations' inclusion would have altered the RFC and the ALJ's ultimate findings.

---

12.04B were also met under the Listing, which states: "The required level of severity for these disorders

10. The court will, however, vacate the ALJ's decision to the extent that she found that the claimant is capable of performing the sedentary jobs that were identified by the VE in his testimony and included on page 17 of the ALJ's opinion. (See Tr. 30-31 & 691-92.) The ALJ's finding that Vann is capable of performing these jobs conflicts with the ALJ's RFC findings, which state that the plaintiff could "sit for 4 hours total in an 8-hour day" and only for two hours at a time.[4] (Tr. 23.) Being able to sit only for 4 hours per day generally precludes sedentary jobs such as the ones included in the ALJ's opinion, but the ALJ did not explain why the plaintiff could perform these jobs despite her sitting restrictions and the apparent requirement that she alternate between sitting, standing, and walking during the course of the day. *See, e.g.*, SSR 83-10, 1983 WL 31251 at *5; SSR 83-12, 1983 WL 31253 at *4. Similarly, the ALJ should explain on appeal why she did not include limitations in her findings as to Vann's RFC that were mentioned in Dr. Schanno's source statement, to the extent that those limitations are relevant to the jobs that the ALJ finds Vann can perform.[5]

---

is met when the requirements in *both A and B* are satisfied, *or* when the requirements in *C* are satisfied."

[4] The court notes that substantial evidence exists in the record to support a finding that Vann has no limitations on her ability to sit, since Vann stated during a hearing before the ALJ that there are no limits on her ability to sit. (See Tr. 643; see also Tr. 24.) Since the ALJ's actual RFC findings limit Vann to only 4 hours sitting per day, however, the ALJ must either modify her RFC findings on remand or else explain the apparent inconsistency between her RFC findings and her finding that Vann can perform the sedentary jobs listed in her opinion.

[5] For example, Dr. Schanno's source statement indicates that Vann can only perform "frequent[]" rather than "continuous[]" handling (Tr. 578) and can only tolerate exposure to "moderate" noise (Tr. 580). Neither of these limitations were included in the RFC findings, however, despite the fact that the *DOT* indicates that the position of laminator (a type of machine feeder/tender position) requires "constant" handling and exposure to "loud" noise. While the court can accept findings that have only minor inconsistencies with the *DOT*, *e.g.*, *Rutherford v. Barnhardt*, 399 F.3d 546, 558 (3d Cir. 2005), it would be preferable if the VE or ALJ could provide an explanation on the record when such limitations are not included in RFC or when the claimant is found capable of performing such jobs despite such limitations.

11. The court rejects, however, the plaintiff's argument that the page missing from Dr. Schanno's materials during the 2008 hearing is sufficient to call into question the validity of the VE's testimony. The court agrees with the defendant that a reading of the record makes it reasonably clear that the missing page was the third page of the Dr. Schanno's examination report, which the ALJ did not rely upon in her hypothetical questioning of the VE. The plaintiff's assertion that the missing page could have been a "page four" rather than a "page three" and the "source statement" rather than the "report" (see D.I. 18 at 6) is belied by the hearing transcript, in which the ALJ says that she'll do her best "to get the page *three* of the report."[6] (See Tr. 697 (emphasis added).)

Therefore, IT IS HEREBY ORDERED THAT:

1) The plaintiff's motion for summary judgment (D.I. 13) is GRANTED IN PART AND DENIED IN PART.

2) The defendant's cross-motion for summary judgment (D.I. 16) is GRANTED IN PART AND DENIED IN PART.

3) The ALJ's opinion is AFFIRMED IN PART and VACATED IN PART.

4) This matter is remanded to the ALJ for further proceedings consistent with this opinion.

Dated: June 1⃝, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

---

[6] Even if there were some ambiguity as to which page was missing, the plaintiff does not even attempt to explain how the missing page might have affected the VE's testimony or the ALJ's ultimate decision. In the future, counsel should bear in mind that, unless the appellant provides a compelling reason as to why the missing page might have been significant, the court is not likely to vacate an ALJ's decision and invalidate a VE's testimony simply because a single page of a single report was mistakenly omitted from the exhibit binder.